**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**GARY S. HINES,**

**Plaintiff,**

**v.**

**HARTFORD LIFE INSURANCE**
**COMPANY,**

**Defendant.**                                              **No. 10-0265-DRH**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

## I. Introduction and Background

Pending before the Court are the parties' cross motions for summary judgment, memorandums in support and responses in opposition (Docs. 33, 40, 54, 55). Both parties maintain that they are entitled to summary judgment on plaintiff's ERISA cause of action. Defendant Hartford Life Insurance Company ("Hartford") maintains that it is entitled to summary judgment as it reasonably determined that plaintiff Gary S. Hines ("Hines") was not disabled under the terms of his long-term disability benefits plan, while, Hines maintains that he is entitled to summary judgment as Hartford's continuing refusal to pay his long-term disability benefits in spite of clear medical evidence in the Administrative Record supporting payment to him is in violation of the plan and of ERISA and that Hartford's decisionmakers have an inherent conflict of interest and bias in favor of denying and terminating claims.

Based on the applicable law and the following, the Court grants plaintiff's motion for summary judgment and denies defendant's motion.

On April 9, 2010, Hines filed a one count complaint against Hartford under the Employee Retirement Income Social Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERSIA") to recover disability pension benefits due under a Disability Pension Plan (Doc. 2).   The complaint alleges that Hines, while employed at MasterCard Worldwide, participated in a Long-Term Disability Plan from Hartford. Hines has been declared disabled and unable to work in any capacity and was declared eligible, by Hatford, for the initial classification of Long-Term Disability benefits under the Group Insurance plan.   Thereafter, Hines alleges that defendant has improperly withheld disability benefits which are due to him pursuant to the terms of the Long-Term Disability Plan.   Hines seeks the back disability benefits under the plan plus future disability benefits, attorney's fees, costs and expenses.

## II.  <u>Facts</u>[1]

Gary Hines was employed by Mastercard Worldwide as a Senior Professional Software Engineer.   As an employee of MasterCard, Hines was eligible for and participated in its ERISA regulated employee welfare benefit plan (the "Plan"). Defendant Hartford is the long term disability insurer for the Plan.   As a Senior Professional Software Engineer, Hines primarily worked in a sedentary position using

---

[1] The Court has carefully reviewed the parties' recitations of the facts.  The Court has attempted to limit its discussion to those facts which are material to the issues in this case based upon the applicable law, the record and those not in dispute.

the computer and telephone.  Hines worked in a sedentary position for approximately 7 hours per day with the ability to alternate sitting and standing as needed.

On January 17, 2008, Hines ceased work due to back and right leg pain and left foot drop secondary to spondylosisthesis and lumbar disc displacement.[2]  At that time, Hines claimed to be totally disabled.  On January 21, 2008, Hartford approved Hines' short term disability claim, finding Hines disabled pursuant to the terms of the Plan.  On January 24, 2008, Hines underwent lumbar fusion surgery for an L5-S1 fusion, bone graft and screw fixation.  Shortly thereafter, Hines submitted a claim for long term disability benefits under the Plan.  After reviewing medical records from Hines' treating physicians, Dr. Yoon (Hines' neurosurgeon) and Dr. Guy Burrows (Hines' neurologist), Hartford determined that Hines' condition continued to limit his ability to perform his regular occupation and approved his claim for long-term disability benefits effective April 16, 2008.[3]  Around the same time, Hines filed for and was declared disabled by the Social Security Administration.[4]

After his initial lumbar fusion surgery, Hines participated in physical therapy and received an epidural steroid injection to relieve his back pain.  Hines reported that the physical therapy and steroid injection worsened his pain.  On July 1, 2008, Hines underwent a second lumbar fusion surgery.  Subsequently, Hines was examined by Dr. Yoon on August 11, 2008; September 15, 2008; October 23, 2008;

---

[2]Hines' last day of work before claiming disability pursuant to the Plan was on January 16, 2008.

[3]Hines received LTD monthly benefits of $4,444.45.  Under the Plan, the benefits would be paid until Hines turns 65 or loses benefits under the policy.

[4]The social security benefits offset the amounts paid by Hartford.

and November 17, 2008.  After most visits, Dr. Yoon executed a form provided by Hartford titled "Attending Physicians Statement of Continued Disability" ("APS").  Dr. Yoon also wrote letters detailing Hines' treatment and prognosis.    The following is a summary of relevant statements in Dr. Yoon's APS forms and letters:

- In the APS form following Hines' August 11, 2008 visit, Dr. Yoon reported that Hines tolerated the second fusion surgery but still had some post-operative pain, with the need to continue using a walker and left foot drop.  Dr. Yoon recommended additional physical therapy for a 4-week period.

- In a letter dated September 15, 2008, Dr. Yoon Stated:  "I believe [Hines'] disability is severe enough that he should consider applying for disability.  I will refer him to Dr. Berry who has seen him before, but has not had any pain management procedures done by Dr. Berry up to this point."

- In a letter dated October 23, 2008, Dr. Yoon indicated that on November 17, 2008, Hines would be released to return to work full-time.

- In an APS form faxed to Hartford on October 24, 2008, Dr. Yoon referenced Hines' continued pain, persistent left foot drop, use of a walker, and referral to pain management.  Hines' diagnosis was listed as spondylolisthesis.

- On November 21, 2008, Dr. Yoon signed a letter stating that Hines was <u>no longer released to work on November 17, 2008</u>.  The accompanying APS form referenced Hines' continued pain.  The form also listed Hines' diagnosis as spondylolisthesis and stated that his current treatment plan was pain management.  Hines' next scheduled office visit was listed as March 16, 2009.

On December 1, 2008, Debra Gutierrez (a Hartford "decision maker"), noted that "per form signed on November 17, 2008, [Hines] has not been ready to return to work full time."  On December 4, 2008, Rowena Buckley (a Hartford claim management employee) contacted Dr. Yoon's office to discuss Hines' ability to perform sedentary work.  Buckley did not speak directly with Dr. Yoon because Dr. Yoon was not at his office that day.  Instead, Buckley spoke with "Allison."  Allison stated "there was nothing in his chart at this time that says he could do sedentary work so she will have to speak with [Dr. Yoon]."  Later that day, Allison advised Buckley that Dr. Yoon had "responded on the note she sent him" and said that Hines could perform full time seated activities with the option of changing positions and using his hands for a keyboard starting immediately.   Allison also faxed a handwritten note containing her question for Dr. Yoon and Dr. Yoon's purported response.  On December 8, 2008, based on the information provided by Allison, Buckley recommended termination of Hines' long term disability benefits.

On December 9, 2008, Hines went to Pain Management Services for an epidural steroid injection.  Hines' reported that his back pain was worse, throbbing, aching, sharp, and constant.  The physician examining Hines observed that Hines was "well developed, well nourished and in no acute distress in the seated position."

On December 16, 2008, Hines' long term disability benefits were terminated by Hartford.  According to Hartford's benefits termination letter, Hines' disability benefits were terminated because he no longer met the disability policy definitions in that Hartford determined he was physically able to perform sufficient duties of

employment under the policy.  Further, the letter stated that the decision to terminate benefits was based on Hartford's entire file.  However, the only record referred to in the termination letter evidencing Hines' ability to perform his employment duties was the December 4, 2008 note faxed by Allison to Buckley.  Subsequently, Gutierrez informed Hines that his "claim was terminated as info from Dr. Yoon stated he was capable of performing sedentary work for 8 hours/day…"        On December 19, 2008, Buckley again spoke to Allison.  Allison told Buckley, "there seems to be some misunderstanding" and said, "[Dr. Yoon] probably did not intend for [Hines] to return to his own job right away."  Allison also said that Hines is complaining of a lot of pain and is seeing pain management.  Hartford responded that it "accept[s] the findings of treating physicians and if Dr. Yoon had objective findings that support a level of pain that would preclude full time seated activities, using his hands, they would defer to [Dr. Yoon]."  Allison advised that Hines was last seen by Dr. Yoon on November 17, 2008, that the next office visit was scheduled for December 29, 2008.  Allison further advised that Dr. Yoon's opinions were also based on the findings of pain management.  Hartford advised that it would "wait to hear from [Dr. Yoon] following the next office visit…"

On December 22, 2008, Hines informed Gutierrez that there was a misunderstanding.  Hines "state[d] that he is still using [a] walker and is in a lot of pain and unable to return to work."  Hartford informed Hines that it would "check on requirements for appeal if received info from Dr. [Yoon] retracting return to work [statement]."

In a letter dated December 30, 2008, addressed to Dr. Guy T. Burrows of the neurologic institute, Dr. Yoon stated that Mr. Hines "still has a significant amount of pain. Even though he does want to go back to work he apparently cannot perform even his daily routine at home. I have suggested to him that it maybe worthwhile to obtain a functional capacity evaluation. However, this is not covered by his insurance. I believe his pain is genuine and probably should be applying for disability."

On December 31, 2008, Dr. Burrows examined Hines. During the examination, Hines reported that the second surgery made his pain worse. Dr. Burrows' physical exam findings reflected neurological deficits in Hines' legs and the following: "[p]atient uses a walker for gait and support of his back as well as standing intermittently when sitting for any period of time to relieve back pain." Dr. Burrows concluded Hines had (1) Sensory axonal peripheral polyneuropathy. (2) Lumbar pain with left L5 and right S1 radicular findings and (3) Gait abnormality and prolonged sitting difficulty related to pain."

On January 28, 2009, Hines, through his attorney, appealed Hartford's termination of his claim for continued benefits. Hines' appeal included a letter from Dr. Stuart Mauch, an internist, stating:

> My patient Gary Hines is diagnosed with severe low back pain radiating down the right leg and left foot drop, which limits walking and interferes with prolonged sitting. He is status post lumbar fusion 1/24/2008 and 7/1/2008 with persistent pain and left foot drop. He continues to use a walker for gait abnormality and support of his back. Because of these conditions, [Hines] is unable to even perform daily routines at home. In my opinion he is unable to work in any capacity.

In response to the appeal, Hartford, through Marsha Macko, determined that a full medical review was necessary.   Macko hired MES solutions, which had Hines' medical records reviewed by Dr. Deepak Awasthi, a neurosurgeon.  In his report, Dr. Awasthi advised that, he spoke with Dr. Mauch, Dr. Yoon, and Dr. Burrows.  He did not meet with or conduct an examination of Hines.  Dr. Awasthi advised that Dr. Mauch stated Hines is unable to work because of subjective significant complaints of pain. Dr. Awasthi reported that Dr. Yoon indicated that Hines can do sedentary work but a functional capacity evaluation would be beneficial.   Finally, Dr. Awasthi reported that Dr. Burrows had no opinion regarding work ability.   Further, Dr. Burrows reportedly indicated that Hines had chronic conditions requiring chronic treatment.

The report noted various records from Dr. Yoon, including the December 4, 2008 note indicating that Hines could return to work.  The report also noted that Dr. Yoon suggested a functional capacity evaluation study "since the claimant is severely physically impaired by the low back pain." Finally, Dr. Awasthi noted Hines' lumbar and thoracic myelogram/post-myelo CT scans on February 6, 2009.  With regard to the February 6, 2009 scans Dr. Awasthi made the following observations:

> [the scans reveal] multi-level pathology including stenosis and disc protrusions/herniations in the thoracic spine with mention of thecal sac and spinal cord flattening.  These are ominous findings (if real).  There is also mention of C4-6 anterior cervical fusion in the CT scan reports (there is no mention in the medical records of the 3 physicians of a past history of neck surgery); yet there is no mention of a possible lumbar fusion (in the CT scan reports) that [Hines] indeed apparently underwent, according to the medical records of the 3 physicians.  There is mention of L34 and L45 disc bulging and

degenerative central canal stenosis as well as L5S1 disc spur complex and right foraminal stenosis.

With regard to the medical records from December 17, 2008 to the present, Dr. Awasthi made the following observations:

> [Hines] is stated as unable to work in any capacity due to the severe low back pain and left foot drop.  This is documented in the clinic note of Dr. Burrows dated 12/31/08; the letter of Dr. Mauch dated 1/14/09; letter by Dr. Yoon dated 12/30/08.   Thus, according to the Attending Physicians the claimant is physically impaired from any activities.

After completing his review, Dr. Awasthi concluded that Hines was not disabled and that he could perform sedentary duties.  Dr. Awasthi opined, in relevant part, as follows:

> According to my opinion, it would be difficult for the claimant to stand or walk for greater than 1 hour at a time. However, sitting for as long as 2 hours at a time would certainly be possible. Given the claimant's severe low back pain and right leg pain as well as left leg weakness (left foot drop) and numbness would make it difficult for the claimant to lift anything greater than 10 pounds. Bending and twisting would be very difficult and should be avoided.

> In my opinion, the claimant would be capable of full-time sedentary work from the period of 12/17/08 to present.

> If the claimant indeed has multi-level thoracic pathology including stenoses and disc herniations as described in the 2/6/09 CT scans, then sedentary work would be the highest level of work recommended due to the possibility of spinal cord injury.

On March 9, 2009, Hartford informed Hines of its decision to uphold its benefit determination under the Regular Occupation definition of disability, thereby exhausting Hines' administrative remedies under ERISA.  The Appeal Denial Letter does not reference the misunderstanding between Buckley and Allison and it does not

reference any of the communications between Hines and Hartford.  Hartford acknowledged Hines' approval of Social Security benefits and explained that the government's Social Security program uses different rules in determining benefit eligibility than those used under his ERISA Plan.

The Plan provides long-term disability benefits if the participant becomes disabled as defined by the express terms of the Plan.  The Plan provides:

### How do We define Disability?
*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.

### Occupation Qualifier
*Disability* means that during the *Elimination Period* and the following 24 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
2) not *Gainfully Employed*.
After the *LTD Monthly Benefit* has been payable for 24 months, *Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
1) continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
2) not *Gainfully Employed*.

### Earnings Qualifier
*You* may be considered *Disabled* during and after the *Elimination Period* in any month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience.  On each anniversary of *Your Disability*, *We* will increase the *Monthly Earnings* by the lesser of the current annual percentage increase in *CPI-W*, or 10%.
*You* are not considered to be *Disabled* if *You* are able to earn more than 80% of *Your Monthly Earnings*.  Salary, wages, partnership or proprietorship draw, commissions bonuses, or similar pay, and any other income *You* receive or are entitled to receive will be included.  Any

lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

**What is the Elimination Period and how is it satisfied?**
The *Elimination Period* begins on the day *You* become *Disabled*.  It is a period of continuous *Disability* which must be satisfied before *You* are eligible to receive benefits from *US*.  *You* must be continuously *Disabled* through *Your Elimination Period*.

## III.  <u>Summary Judgment</u>

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would-as a matter of law-conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010).  The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir. 2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

## IV.  Analysis

Under ERISA, judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 636-37 (7th Cir. 2005).  Where a qualifying plan gives the administrator discretionary authority to determine eligibility for benefits, the court shall review the administrator's decision to deny benefits under the arbitrary and capricious standard. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007); *Hackett v. Xerox Corp.,* 315 F.3d 771, 773 (7th Cir. 2003). And to determine whether a plan administrator has discretionary authority, the court looks to the plain language of the plan. *Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000).  Here, the parties agree that the plan administrator has discretionary authority under the plan.  Hence, the Court reviews the decision to terminate the benefits under the arbitrary and capricious standard.

Under the arbitrary and capricious standard the Court may overturn an administrator's decision only if the decision is "downright unreasonable." *Mote,* 502 F.3d at 606.  This standard is deferential, but it is not a "rubber stamp," as the Court

will not uphold a denial of benefits if the plan administrator fails to articulate specific reasons for rejecting evidence and denying the claim. *Black v. Long Term Disability,* 582 F.3d 738, 745 (7th Cir.2009) (citing *Williams v. Aetna Life Ins. Co.,* 509 F.3d 317, 324 (7th Cir. 2007)). The court's ultimate goal is to ensure that the plan administrator's decision has rational support in the record. *See Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008); *Exbom v. Central States S.E. & S.W. Areas Health & Welfare Fund,* 900 F.2d 1138, 1143 (7th Cir. 1990) (explaining that there must be a rational connection between the facts found and the administrator's decision). In making its determination, a reviewing court must consider: (1) the administrator's impartiality; (2) the complexity of the issues; (3) the process afforded the parties; (4) the extent to which the administrator utilized experts; and (5) the soundness of the administrator's rationale. *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir. 1995)).

A plaintiff challenging an administrator's decision to terminate benefits under this standard often tries to show that the administrator simply failed to exercise judgment or used unreasonable judgment.  See, *e.g., Hackett v. Xerox Corp. Long–Term Disability Income Plan,* 315 F.3d 771, 774–75 (7th Cir.2003) (reversing summary judgment for administrator under the abuse of discretion standard where "there is an absence of reasoning in the record to support" the termination of benefits); *Hess v. Hartford Life & Accident Insurance Co.,* 274 F.3d 456, 461 (7th Cir.2001) (affirming judgment for plaintiff under abuse of discretion standard where "the plain language or structure of the plan or simple common sense will require the

court to pronounce an administrator's determination arbitrary and capricious"); *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 329 (7th Cir.2000) (reversing summary judgment for administrators in consolidated cases where district court erroneously applied the abuse of discretion standard, and observing that a court can set aside a discretionary judgment only if it was an abuse of discretion, "that is, unreasonable, and not merely incorrect").

The arbitrary and capricious inquiry turns on whether the insurer communicated "specific reasons" for its determination to the claimant, whether the insurer afforded "an opportunity for full and fair review," and "whether there is an absence of reasoning to support the plan administrator"s determination." *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009)(citations omitted). When an insurer ignores the plaintiff"s key medical evidence, the insurance company has not afforded the plaintiff an opportunity for a full and fair review. *Id.* An insurer"s failure to address key evidence supporting the plaintiff"s claim constitutes an absence of reasoning. *Id.* A plan administrator "must address any reliable, contrary evidence presented by the claimant;" otherwise, the determination is unreasonable. *Id.*(citations omitted). Procedural reasonableness is the cornerstone to an abuse of discretion inquiry. *Id.*

Here, Hartford argues that its decision was reasonable and not arbitrary and capricious. Hartford contends that it properly exercised its discretion under the Plan based on Hines' inability to demonstrate his conditions were of disabling severity and that it reasonably relied upon the findings of its independent consulting physician,

Dr. Awashti.  Hines maintains that this case is littered with procedural errors, omissions, and self-serving decisions by Hartford's decision makers and that Hartford's significant financial conflict of interest resulted in an unreasonable determination.

A review of the record indicates that Hartford's decision from the termination of benefits and throughout the appeal process was unreasonable.  Gutierrez's initial denial of Hines' benefits was based on the 12/4/08 unsigned note which was a "mistake."  Further, Macko's affirmation on appeal was based on numerous errors.

On November 17, 2008, Dr. Yoon examined Hines.  Thereafter, Dr. Yoon personally signed a Physician's Statement of Continued Disability form dated 11/17/08 in which Dr. Yoon determined that Hines was not fit to return to work. According to Hartford, Hines was fit to return to work based on the 12/4/08 note. However, before the 12/16/08 claims denial letter was issued, Hines received a Caudal Steroid Injection on 12/09/08, due to a condition which had become worse, and involved  throbbing, aching and sharp consistent pain.  *See Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 834 (7th Cir. 2009)(complaints of pain cannot be dismissed because they are subjective).  Hartford did not take into consideration the steroid injection or Hines' worsening condition when it initially denied the claim.

In addition, the 12/19/08 telephone call between Allison and Buckley put Hartford on notice of the mistake it made in its initial denial of benefits.  Allison, advised Buckley that a mistake was made, that Dr. Yoon did not intend for Hines to

return to work, and that Dr. Yoon probably only agreed to the 12/4/08 note because he thought Hines was actually returning to work.  On 12/19/08, Williams advised that she would wait to hear from Dr. Yoon following the next office visit, which was scheduled for 12/29/08.  Dr. Yoon wrote a letter on 12/30/08, which clearly stated that Hines was disabled and recommended an application for disability and referred Hines for pain management.

Further, it appears that Macko ignored or failed to consider the context in which the initial denial was made despite the evidence of the mistake in Hartford's records.  While Hartford contends that Dr. Awasthi was provided the entire medical record, Hartford failed to apprise Dr. Awasthi of the context of the 12/4/08 unsigned note.  Awasthi's packet of medical records states that "handwritten notes of Dr. Yoon dated 12/4/08" were included in the materials.  As evident from the record, it is clear that Dr. Yoon did not create or sign the 12/4/08 note and that his office explained the misunderstanding to Hartford.  In order for expert advice to have any credible weight, the insurer must "provide the expert with complete and accurate information, and determine that reliance on the expert's advice is reasonably justified under the circumstances." *Keach v. U.S. Trust Co.*, 419 F.3d 626, 637 (7th Cir. 2005)(citations omitted).  This failure calls into question the credibility of Hartford's actions and the credible weight of Dr. Awasthi's evaluation of the medical records and his report.  Moreover, Dr. Awasthi's report expressly rejects Dr. Yoon's determination that Hines should receive a Functional Capacity Evaluation and stated, "[o]n the other hand, on 12/4/08 Dr. Yoon felt that the claimant could perform sedentary work."  The fact that

Hartford failed to provide Dr. Awasthi with all the relevant information suggests procedural unreasonableness.

Next is the dueling opinions of Hines' treating physicians, Dr. Yoon, Dr. Burrows and Dr. Mauch who opined that Hines was disabled and Dr. Awasthi who never examined Hines but who concluded that Hines was not disabled and could perform the duties of his own occupation.   Dr. Awasthi seems skeptical of the medical records he reviewed as noted in his report:

> [the scans reveal] multi-level pathology including stenosis and disc protrusions/herniations in the thoracic spine with mention of thecal sac and spinal cord flattening. **These are ominous findings (if real)**.

Despite these findings, neither Hartford nor Awasthi attempted to obtain a second CT scan.  Under ERISA, treating physicians' opinions are not entitled to more deference than the opinions of physicians that the administrator hired.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34, 123 S.Ct 1965 (2003).  At the same time, however, administrators may not arbitrarily "refuse to credit a claimant's reliable evidence including the opinions of a treating physician." *Id.* at 834, 123 S.Ct 1965.

At the very least, the record of review is not sufficient to provide a reasonable basis for discounting the treating physicians' and Hines' accounts of his pain and limitations.  *Leger*, 557 F.3d at 834.  It appears that Dr. Awasthi's report dismissed Hines' accounts of pain because there was "no objective medical evidence" that would suggest the severity of the pain.  To disagree with the apparently sound opinions of the treating physicians, an administrator needs something much more solid than

what Dr. Awashti provided in this case.  *See id.* at 834 (reminding courts that the plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including opinions of treating physicians.).

Under these circumstances, the Court cannot uphold Hartford's determination that Hines was no longer "Totally Disabled" under the Plan.  The Appeal Denial Letter states that it is based on "all evidence" but it is clear that it failed to consider any of the issues previously addressed.  There is no indication in the record that Hines' condition was any better in December 2008 than it had been in January 2008.  Also, it is clear that Hartford jumped on the mistaken indication from Dr. Yoon's office that Hines could return to work, when Hines was physically was unable to return to work as he was having difficulty at home.  Obviously, Dr. Yoon thought that the claimant wanted to try to go back to work.  Dr. Yoon's office later straightened out the confusion but Hartford used the mistaken note as the basis to rule Hines able to return to work and to terminate his benefits.  Further, at no time before terminating his benefits or during the appeals process did Hartford order a functional capacity evaluation or conduct an independent evaluation of Hines. While a functional capacity evaluation is not something that would be done in the ordinary course of medical treatment, it would seem, and likely would have been ordered in light of the ambiguous message coming from the treating physician.  Instead, Hartford, during the appeal process, hired Awashti who reviewed the file, talked to Hines' treating physicians and, without examining Hines, agreed with Hartford's previous finding

that Hines was no longer disabled.  For these reasons, the record review in this case did not provide a reasonable basis for denying/terminating Hines' benefits.

As to the issue of Hartford's conflict of interest, the Court finds that it merits mentioning even though the Court does not consider it outcome determinative as the Court has found Hartford's decision was unreasonable for the reasons stated above.

The Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), modified courts' review of most decisions denying ERISA benefits by plan administrators who have a financial stake in the decision to grant or deny benefits.  In *Glenn*, the Supreme Court held that an ERISA plan administrator has a conflict of interest when the administrator both determines eligibility and pays benefits. 128 S.Ct. at 2348.  The Court made clear that although that conflict will not alter the standard of review of ERISA cases, the conflict is a factor that should be taken into account by courts when determining whether a plan abused its discretion in deciding to deny benefits to a plan participant. The Court explained that "conflicts are but one factor among many that a reviewing judge must take into account," and that "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.  This kind of review is no stranger to the judicial system.  Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Id.* at 2351. Any one factor being considered:

will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* (internal citations omitted).

Hines argues that Hartford has a conflict of interest as both the administrator and payor of the claim. Hines also argues that that Hartford has a significant financial stake in the outcome of his claim. Specifically, Hines argues that Hartford will make more than $400,000 by refusing to pay Hines' claim and this large benefit to Hartford by denying the claim adds to the gravity of the conflict of interest. Hartford responds that Hines cannot establish that a conflict of interest decisively influenced Hartford's decision. Further, Hartford contends that the decision was based on the evidence in Hines' medical record and not based on Hartford's compensation structure.

Here, Hartford, like many EIRSA disability plan administrators, is conflicted in that it has the power to deny claims for benefits and also a duty to pay benefits. However, the Court does not find evidence in the record to indicate that this conflict was significant enough to have rendered Hartford's motive improper in terminating Hines' benefits. Thus, the Court does not afford it significant weight in its analysis.

Because the Court finds that Hartford's denial/termination of the benefits to be arbitrary and capricious, the Court must determine whether it should remand for further proceedings or reinstate the benefits.  *See Tate v. Long Term Disability Plan for Salaried Emps. Of Champion Int'k Corp. 506*, 545 F.3d 555, 563 (7th Cir. 2008), overruled on other grounds by *Hardt v. Reliance Standard Life Ins. Co.*, — U.S. — 130 S.Ct. 2149 (2010).  "Generally, when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case, as well as a conventional case, is to remand for further findings or explanations, unless it is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."  *Tate*, 545 F.3d at 563 (internal quotations omitted) (remanding to administrator). "In fashioning relief for a plaintiff who has sued to enforce her rights under ERISA ... we have focused 'on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination' of benefits." *Schneider v. Sentry Group Long Term Disability Plan,* 422 F.3d 621, 629 (7th Cir. 2005), quoting *Hackett,* 315 F.3d at 776 (reversing grant of summary judgment for plan and ordering reinstatement of benefits that were improperly terminated).

The Court finds that an outright award of back benefits and reinstatement is proper in this case. Here, the "*status quo* prior to the defective procedure was the continuation of benefits.  Remedying the defective procedures requires reinstatement of benefits."  *Id.* at 776.  Throughout the claims process and during the appeal process, Hines submitted all documents necessary to support his claims including

physicians' statements, medical records and objective evidence requested from Hartford. He included documentation that the 12/4/08 unsigned note was a mistake and documentation that he was still disabled. His medical condition did not improve since the initial finding of disability; instead his condition continued to worsen from the onset of the disability. In spite of all this. Hartford decided to hire a third party medical examiner (and not fully inform the examiner of the context of the 12/4/08 note) rather than consider the appeal based on the evidence submitted. The record provides a "clear-cut" case that Hines was disabled and that Hartford was unreasonable in terminating his benefits. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996)(""so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."). Further, the Court finds that Hines is entitled to interest on the back benefits

Lastly, Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In awarding attorney's fees to the prevailing party, courts ask whether the losing party's position was substantially justified and taken in good faith. *Wyatt v. Unum Life Ins. Co. of Am.*, 223 F.3d 543, 547 (7th Cir. 2000). The Court finds that Hartford's position was not substantially justified and was not taken in good faith as shown above. Therefore, Hines is entitled to reasonable attorney's fees and costs. .

## V. <u>Conclusion</u>

Accordingly, the Court **GRANTS** plaintiff's motion for summary judgment and **DENIES** defendant's motion for summary judgment. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Plaintiff Gary S. Hines and against Hartford Life Insurance Company. The Court **AWARDS** Gary S. Hines all the back payments due under the Plan, plus prejudgment interest and attorney's fees and costs. The Court **DIRECTS** Hines to submit a brief with supporting documentation on these issues on or before April 16, 2012 and **ALLOWS** Hartford up to and including April 30, 2012 to file a response to these calculations. The Court then will enter final judgment accordingly.

**IT IS SO ORDERED.**

Signed this 29th day of March, 2012.

David R. Herndon
2012.03.29
22:30:16 -05'00'

**Chief Judge**
**United States District Court**