IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GARY S. HINES,

Plaintiff,

v.

HARTFORD LIFE INSURANCE
COMPANY,

Defendant.                                                   No. 10-0265-DRH

MEMORANDUM and ORDER

HERNDON, Chief Judge:

I. Introduction

Now before the Court is the issue of back payments, prejudgment interest, attorney's fees and costs. On March 29, 2012, the Court granted the plaintiff's motion for summary judgment awarding plaintiff back payments under the long term disability plan, plus prejudgment interest, attorney's fees and costs (Doc. 58). The Court directed plaintiff to brief the issues with supporting documentation. Plaintiff did so (Doc. 59). Plaintiff maintains that as of April 30, 2012 he is entitled to back payments of $101,492.88, pre-judgment interest of $11,345.64, attorney's fees of $46,316.00 and costs of $405.00.[1] Defendant objects to all of plaintiff's calculations with the exception of the $405.00 in costs (Doc. 60). After reviewing the submissions

---

[1] As final judgment has not been entered, plaintiff calculated his costs using April 30, 2012 as that was the due date of the briefs. Thus, additional figures for back payments and pre-judgment interest need to be determined up to the date that Judgment is entered.

and applicable law, the Court awards the following to plaintiff.

## II. <u>Analysis</u>

**Back payments**

As to back payments due, Hines argues that as of April 30, 2012 he is entitled to $101,492.88 in back payments. Defendant counters that Hines incorrectly calculates his past due benefits because he improperly extends the period of time for which payments are payable. The Court rejects this argument. In awarding Hines back payments, the Court found: "an outright award of back benefits and reinstatement is proper in this case. Here, the '*status quo* prior to the defective procedure was the continuation of benefits. Remedying the defective procedures requires reinstatement of benefits.' *Id*. At 776." (Doc. 58, p. 21). As judgment will be entered today, November 30, 2012 and employing Hines' methodology for calculating back payments, the Court determines that Hines is entitled to $118,555.03 in back payments.

**Pre-Judgment Interest**

Whether to award an ERISA claimant prejudgment interest is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Fritcher v. Health Care Service Corp.,* 301 F.3d 811, 820 (7th Cir.2002). "Prejudgment interest must make the victim whole." *First National Bank of Chicago v. Standard Bank and Trust*, 172 F.3d 472, 480 (7th Cir. 1999). The Seventh Circuit recognizes using the prime rate for fixing prejudgment interest where there

is not statutory interest. *Fritcher*, 301 F.3d at 820; *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). In granting summary judgment in favor of plaintiff, the Court found that an award of prejudgment interest is proper in this matter (Doc. 58, p. 22).

Plaintiff moves the Court to use 6.3% as the interest rate. According to plaintiff, Moody's credit rating agency assigned defendant's corporate bonds a rating of "BAA" and that since the initial denial of plaintiff's claim and during this time period the average monthly yield for "BAA" corporate bonds was 6.30025%. Plaintiff argues that this rate takes into account the risk of default by defendant along with a variety of factors that determine the riskiness of an asset including the prime rate and the rate of default. Defendant contends that the proper interest rate is the prime rate which was 3.26% from December 2008 to April 2010 and 3.25% from April 2010 to the present. Looking at the circumstances of this case, the prime rate and the case law, the Court finds that the prime rate of 3.25% is the proper rate.[2]

Based on the Court's calculations utilizing 3.25% as the interest rate, the Court finds that plaintiff is entitled to a total of $13,058.49 in compounded prejudgment interest. Compounded interest of $166.89 on the December 2008 back payment of $1,222.88 back payment; compounded interest of $12,090.95 on the back payments of 90,520.20 from January 2009 to December 2011; and compounded interest of $800.65 on the back payments of $26,811.95 from January 2012 to November 2012.

---

[2] From December 16, 2008 to the present the prime rate has been 3.25%.

**Attorney's fees**

In a beneficiary's ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In the Court's Order awarding plaintiff attorney's fees, the Court found that "Hartford's position was not substantially justified and was not taken in good faith ...." (Doc. 58, p. 22). Thus, the Court needs to determine a reasonable fee. The district court must make that assessment, at least initially, based on a calculation of the "lodestar"—the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else. *See Pickett v. Sheridan Health Care,* 664 F.3d 632, 640–43 (7th Cir. 2011). In limited circumstances, once calculated, the lodestar amount may be adjusted. *See Perdue v. Kenny A. ex rel. Winn,* ––– U.S. ––––, 130 S.Ct. 1662, 1673–74, 176 L.Ed.2d 494 (2010); *Hensley v. Eckerhart,* 461 U.S 424, 430, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Robinson v. City of Harvey,* 489 F.3d 864, 871–72 (7th Cir. 2007).

In setting a reasonable billing rate, courts are directed to consider the attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Evidence of reasonableness of a proposed hourly rate must include an affidavit or declaration of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Id.* at 896, 104 S.Ct. 1541. Appropriate rates can be determined through direct or opinion evidence about what local attorneys charge

under similar circumstances. *Id.* at 896 n. 11, 104 S.Ct. 1541.

Once the lodestar figure is determined, the court may adjust the figure upward or downward as necessary to make the award of attorney's fees reasonable, while ensuring the fee award does not provide a windfall to the movant. *See Hensley*, 461 U.S. at 429, 103 S.Ct. 1933. Although courts have "broad discretion in setting the appropriate award of attorney's fees," there is a strong presumption that the lodestar amount is reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

In order to determine a reasonable hourly rate, courts should look at the "the market rate for the services rendered." *Pickett*, 664 F.3d at 640. The market rate is the "rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). The attorney's billing rate for comparable work is "presumptively appropriate" to use as the market rate. *Pickett*, 664 F.3d at 640; *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003). "The best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assess. Tech. of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 438 (7th Cir. 2004). Thus, the attorney's actual billing rate paid by his client is "presumptively appropriate" to use as the market rate. *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1311 (7th Cir. 1996). The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received

in similar cases." *Id.* (quoting *Spegon,* 175 F.3d at 555). The party seeking fees bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)). Once the fee applicant satisfies this burden, the other party must provide "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care,* 90 F.3d at 1313).

Here, plaintiff seeks $46,316.00 in attorney's fees, not including the attorney's fees for the appeal of the initial finding of disability. In his fee petition, plaintiff lists seven attorneys who worked on this case. The attorneys listed have many years of experience ranging from 29 years of experience to 2 years of experience of practicing law. The lead partner on the case has 29 years of experience and the primary attorney on the case has 7 years of experience. The hourly billing rates for the attorneys range from $150.00 to $260.00 an hour. The attorneys' fees total $46,316.00.

Based on the documentation submitted, plaintiff has established to this Court's satisfaction that the hourly rates submitted by his legal team are the actual billing rates and are reasonable for this type of ERISA case. Here, while defendant generally objects to the Court's ruling that plaintiff is entitled to attorney's fees, it does not challenge the hourly rates of any of plaintiff's attorneys. Given the experience and expertise of the plaintiff's lawyers the Court finds the rates for the attorneys to be entirely reasonably. Accordingly, the Court will award the plaintiff fees at these rates and moves on to the remaining issue of whether the time expended was reasonable.

Specifically, defendant argues that the Court should decrease the amount of fees sought by plaintiff by a total of $13,286.50 for pursuing dubious discovery claims and a meritless argument regarding the standard of review. By virtue of its familiarity with the litigation, the Court is in the best position to determine the number of hours reasonably expended in the litigation. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409 (7th Cir. 1999); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). The Court should exclude from the fee petition time spent that was "excessive, redundant, or otherwise unnecessary." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).

As to defendant's objections, the Court finds them without merit. The Court concludes that plaintiff's attorney's fee award should not be reduced to reflect her "unsuccessful" arguments. A fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach a certain ground is not a sufficient reason for reducing a fee."). It is appropriate to consider the litigation as a whole, rather than viewing the specific claims atomistically. "The plaintiff's claims of relief ... involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988); see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). Further, the Court cannot second

guess how much time plaintiff's lawyers should have spent on the discovery issues or the standard of review issue in this matter. The issues, figures and hours submitted by plaintiff's attorneys do not seem excessive, redundant or unnecessary. In fact, a review of the billing statements reveals that the hours spent are appropriate billable hours.

**Costs**

Plaintiff requests costs in the amount of $405.00 and defendant does not object to these costs. Thus, the Court awards plaintiff $405.00 in costs.

### III. Conclusion

Accordingly, the Court **AWARDS** Hines $118,555.03 in back payments, $13,058.49 in compounded prejudgment interest, $46,316.00 in attorney's fees and $405.00 in costs. The Court **DIRECTS** the Clerk of the Court to enter judgment based on this Order and the Court's March 29, 2012 Order (Doc. 58) in favor of Gary Hines and against Hartford Life Insurance Company.

**IT IS SO ORDERED.**

Signed this 30th day of November, 2012.

David R. Herndon
2012.11.30
10:53:54 -06'00'

**Chief Judge**
**United States District Court**